847 So.2d 547 (2003)
ZC INSURANCE COMPANY, a foreign corporation, Appellant,
v.
Annis BROOKS, individually, and as natural guardian of Anselique Ashley Brooks, and Ralph Brooks, individually, and as natural guardian of Anselique Ashley Brooks, Appellees.
No. 4D01-4655.
District Court of Appeal of Florida, Fourth District.
May 14, 2003.
Rehearing Denied July 3, 2003.
*548 Deborah L. Greene and T. Geoffrey Heekin of Bartlett, Heekin, Smith & Greene, P.A., Jacksonville, for appellant.
Jane Kreusler-Walsh and Rebecca Mercier-Vargas of Jane Kreusler-Walsh, P.A., West Palm Beach, David L. Kahn of David L. Kahn, P.A., Fort Lauderdale, Louis M. Silber of Silber & Valente, West Palm Beach, Keith Gasman, Fort Lauderdale and Peter Diamond of Michael P. Rudd & Assoc., Miami, for appellee Annis Brooks.
GUNTHER, J.
ZC Insurance Company ("ZC") appeals an order denying its request for declaratory judgment and granting final summary judgment in favor of Annis Brooks and Ralph Brooks ("the Brookses"), individually and as natural guardians of their daughter Anselique Ashley Brooks ("Anselique"). In granting summary judgment, the trial court held that Annis Brooks was not bound by a family member exclusion to the supplemental liability insurance coverage that she had purchased.
This coverage dispute involves the interpretation of a car rental agreement, an insurance policy between ZC and Dollar Rent-a-Car Systems, Inc. ("ZC/Dollar policy"), and the supplemental liability insurance ("SLI") purchased by Annis Brooks. ZC issued a insurance policy to Dollar Rent-a-Car Systems, Inc. ("Dollar"), and under the terms of the policy, Dollar paid *549 a flat monthly premium for each car it rented during a month.
Pursuant to the ZC/Dollar policy, in exchange for a fee, individual Dollar customers could purchase a separate policy for additional coverage. One type of additional coverage available was supplemental liability insurance, defined as:
optional excess liability insurance made available to an auto rentee in addition to the primary auto liability insurance provided in the rental contract or in addition to any other rearranged, corporate limits or other primary automobile liability coverage available to the rentee.
The ZC/Dollar policy provided that coverage was not available to the rentee's family members pursuant to this exclusion:
[l]iability arising out of bodily injury or personal injury or property damage sustained by the rentee or the relatives of the rentee if such relative's [sic] reside with the rentee as of the date the rental agreement is entered into. Relative is defined as anyone related to the rentee by blood, marriage or adoption.
The ZC/Dollar policy, which sets forth the actual contractual governing provisions, including all of the specific exclusions to the SLI excess coverage, is kept on file at Dollar's headquarters in Tampa, Florida. It is not available to Dollar customers at rental locations.
Annis Brooks rented a car from Dollar in Fort Lauderdale, Florida, and paid the additional fee for SLI coverage. The Dollar representative folded a copy of the rental agreement, placed it in a paper sleeve, and handed it to Annis Brooks. The rental agreement stated that the ZC/Dollar policy would protect authorized "renters" who did not have liability coverage up to the limits required by law,
for bodily injury or death of another (excluding any of Your or Additional Authorized Renter's family members related by blood, marriage or adoption residing with You or an Authorized Renter)....
Thus, the rental agreement clearly advises Annis Brooks that the ZC/Dollar policy would not provide coverage for any injuries sustained by her daughter.
The rental agreement is silent, however, on whether the SLI excess coverage would exclude Anselique's injuries by virtue of a family member exclusion. The rental agreement states that
an Authorized Renter is provided with a separate policy providing excess coverage against third-party liability claims for the difference between the Primary Protection and a maximum combined single limit of $1,000,000 (U.S.) per occurrence for bodily injury, including death and property damage, for other than to the Vehicle or to the property of the Authorized Renter while the Vehicle is on rent to You.
The rental agreement further states that the renter
acknowledge[s] and understand[s] SLI is subject to other specific exclusions which are summarized on the separate SLI brochure, which is available at the rental counter.
(emphasis added). It is undisputed that the rental agreement fails to identify by name any specific exclusion, including the family member exclusion. Moreover, although the rental agreement advises that the SLI policy is subject to "other specific exclusions," the rental agreement does not summarize or identify in any way the exclusions applicable to the SLI excess policy. Thus, a customer such as Annis Brooks would not learn of the family member exclusion to the SLI excess coverage unless she asked for the separate brochure containing the summary of the specific exclusions.
*550 At the Fort Lauderdale location, the separate SLI brochure that summarizes the exclusions to the SLI coverage was kept behind the counter, behind the computers, and was only given out when a customer specifically requested it. Thus, it is the separate SLI brochure, not the rental agreement, that summarizes the exclusions and advises a customer for the first time in writing that SLI is subject to a family member exclusion and therefore does not provide coverage for family members.
After leaving the Dollar facility, Annis Brooks was involved in a one-vehicle accident in the Dollar car. When Anselique, a passenger in the car the night of the accident, sought coverage under the supplemental liability policy she was denied coverage under the family member exclusion. ZC filed a declaratory judgment action seeking a determination of its rights and responsibilities under the policy. The Brookses filed counter-claims for declaratory judgment. All parties filed motions for summary judgment, and after a hearing on the issue the trial court granted summary judgment in favor of the Brookses. In its order, the court stated:
Florida law requires an insurance company to set forth all exclusions to insurance coverage in the document which is delivered to the insured.... This Court cannot agree that ANNIS BROOKS was bound by an exclusion if she was not specifically advised of that exclusion.
We agree with the trial court's ruling. The applicable standard of review is de novo because the order granting summary judgment is based on legal, not factual, issues. Cont'l Concrete v. Lakes at La Paz III, 758 So.2d 1214, 1217 (Fla. 4th DCA 2000)(citing Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58, 60-61 (Fla. 1st DCA 1999)).
We conclude that the general statement in the rental agreement that SLI coverage is subject to other specific exclusions, which are summarized in a separate document available on request, does not satisfy the requirements of section 627.421, Florida Statutes (2002). Section 627.421 requires delivery of every insurance policy to the insured "or to the person entitled thereto" no more than sixty days after the effectuation of coverage. § 627.421(1). The statute also requires that:
[a]ny automobile liability or physical damage policy shall contain on the front page a summary of major coverages, conditions, exclusions, and limitations contained in that policy. Any such summary shall state that the issued policy should be referred to for the actual contractual governing provisions. The company may, in lieu of the summary, provide a readable policy.
Id. at (3)(emphasis added).
In this case, neither a readable policy nor a policy with a front page summary of the exclusions was delivered to Annis Brooks. The rental agreement, as delivered to Annis Brooks, conforms with neither the letter nor the spirit of the statute. It fails to properly summarize on the front page the specific exclusions so that customers are adequately informed of their coverage under the SLI excess policy. The very language of the rental agreement stating that the other specific exclusions to SLI coverage are "summarized on the separate SLI brochure" is a clear indication that the insurer did not intend the rental agreement to be the "summary" mandated by section 627.421. Instead, contrary to the statutory requirement, the onus is placed on the customer to ferret out the "summary." We conclude that this instruction to the customer does not constitute delivery within the meaning of the statute. Id.
*551 Judge Warner's thoughtful dissent observes that section 627.421 grants sixty days to provide a copy of the policy to insureds like Annis Brooks. It is uncontroverted in this case that ZC did not provide Annis Brooks with a copy of the policy within that time frame; therefore, ZC failed to comply with the terms of the statute. We respectfully disagree with the conclusion that the rental agreement was silent as to the scope of coverage. It purported to set forth the terms of coverage, and under Rucks v. Old Republic Life Insurance Co., 345 So.2d 795 (Fla. 4th DCA 1977), any conflict with the actual policy must be resolved in favor of coverage. 345 So.2d at 796. Although the certificates of insurance in Rucks were clearly not the policy, the information they contained that implied greater coverage than actually existed was held to bind the insurer to the broader coverage. Id. at 798.
Regarding creating coverage where none existed, it is true that the terms of the policy that Annis Brooks never saw excluded family members from coverage, but the question under Crown Life Insurance Co. v. McBride, 517 So.2d 660 (Fla.1987), is whether failing to provide Annis Brooks with adequate information regarding the scope of the coverage she purchased is tantamount to "fraud or other injustice." 517 So.2d at 662. Florida law recognizes that fraud can occur by omission, and places a duty on one who undertakes to disclose material information to disclose that information fully. Gutter v. Wunker, 631 So.2d 1117, 1118-19 (Fla. 4th DCA 1994). In this case, providing Annis Brooks with documents that define coverage while failing to provide documents that set forth the exclusions to that coverage is tantamount to fraud by omission.
Florida legislators have enacted laws to govern automobile liability policies that require sufficient information be provided to insureds, not merely made available upon request. Id. The obvious point of requiring insurers to deliver a policy to the insured with a summary of coverage and exclusions on the front page, or in the alternative providing a readable policy, is to place sufficient information in the insured's hands to allow her to be fully informed of the scope of the coverage she has purchased. In this case, the rental agreement was particularly misleading because it did set forth the family member exclusion to the coverage provided under the ZC/Dollar policy, but was silent as to the family member exclusion to SLI excess coverage.
We liken this case to the "unacceptable paradox" that is created when an insured receives a document that purports to give coverage, while a separate, unseen document cancels that very coverage. Rucks, 345 So.2d at 798. Under Rucks, an insurer cannot furnish an insured with documents indicating that coverage exists under the policy, then rely on an exclusion set forth only in documents never actually delivered to the insured to deny coverage.
Accordingly, we affirm the order granting summary judgment. In addition, we grant the Brookses' motion for attorney's fees in an amount to be determined by the trial court.
AFFIRMED.
HARNAGE, HENRY H., Associate Judge, concurs.
WARNER, J., dissents with opinion.
WARNER, J., dissenting.
The policy in question specifically excluded coverage for family members. The effect of the trial court's ruling, and the majority's affirmance, is to create coverage where none existed. The only circumstance where courts have authorized the *552 creation of coverage has been in promissory estoppel cases to prevent forfeiture of coverage where failure to do so would sanction fraud or injustice. See Crown Life Ins. Co. v. McBride, 517 So.2d 660, 662 (Fla.1987). The Crown court further explained that "[s]uch injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment." Id. (emphasis added). See also Travelers Indem. v. Billue, 763 So.2d 1204, 1204 (Fla. 1st DCA 2000) (noting promissory estoppel requires proof that one party relied to his detriment on the affirmative misrepresentation of another); Prof'l Underwriters Ins. Co. v. Freytes & Sons Corp., 565 So.2d 900, 903 (Fla. 5th DCA 1990) (holding the statement by insurer's agent that insured "had what he needed" lacked specificity to constitute a representation for purposes of promissory estoppel to create coverage).
In Rucks v. Old Republic Life Insurance Co., 345 So.2d 795, 797 (Fla. 4th DCA 1977), cited by the majority, our court acknowledged this principle of law, stating "while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel." (Quoting Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560, 563 (Fla. 4th DCA 1972)).
Here, no affirmative representation was made either by Dollar or the insurance company as to the extent of the supplemental insurance and whether it covers family members. As the majority opinion points out, the rental document simply was silent on the point, only directing the renter to the brochure for more details regarding coverage.
I do not think that section 627.421, Florida Statutes (1999), forms a basis for creating coverage, nor do I think it was violated in any event. It does not appear to me that section 627.421 was intended to apply to car rental agreements in which the renters purchased supplemental insurance because the rental agreement is not the policy. It specifically refers to other documents to determine the extent of coverage. Even if the statute applied, the insurer had sixty days in which to deliver a copy of the policy containing all of the exclusions. The policy had to include a summary of the coverages and exclusions. Here, the rental agreement was obviously not the policy.
More apropos is section 627.4143(1) which requires an outline of coverage, including the principal exclusions, to be provided prior to the issuance of an automobile policy or to accompany the policy when issued. However, that section specifically provides "[n]either this section nor the outline of coverage mandated by this section alters or modifies the terms of the insurance contract, creates a cause of action, or is admissible in any civil action." § 627.4143(5), Fla. Stat. (1999). Thus, although the Legislature directed the insured be given notice of the terms and exclusions of the policy, it also clearly provided that failure to comply with the statute would not alter the terms of the insurance contract.
Under the present state of the law, I cannot conclude the insurance company is required to extend coverage to a family member specifically excluded by the terms of the policy where the insurance company made no affirmative misrepresentations of the terms of the policy.